# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA
## Civil Case No.:

| | |
|---|---|
| Alda Reed,<br><br>   Plaintiff,<br><br>vs.<br><br>Diversified Consultants, Inc.,<br><br>   Defendant. | **COMPLAINT**<br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT AND JURY DEMAND

1. Plaintiff Alda Reed ("Plaintiff") alleges violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq*. ("FDCPA").

## JURISDICTION AND VENUE

2. This Court has jurisdiction under 28 U.S.C. §1331 and 15 U.S.C § 1692k. Venue in this Judicial District is proper under 28 U.S.C. § 1391(b) because Plaintiff Alda Reed resides in this Judicial District; the events giving rise to the cause of action occurred in this Judicial District; and Defendant Diversified Consultants, Inc. is registered and transacts business in this Judicial District.

## PARTIES

3. Plaintiff Alda Reed (hereinafter "Plaintiff") is a natural person, and citizen of the State of Minnesota, residing in Hennepin County, Minnesota.

4. Defendant Diversified Consultants, Inc., (hereinafter "Defendant") is a Florida corporation with its principal place of business located at 10550 Deerwood Park

Blvd., Suite 309, Jacksonville, Florida, 32256. Defendant is registered to do business in Minnesota as a foreign corporation. Incorporation Services, Inc. is the registered agent authorized to accept service on behalf of Defendant at 901 Marquette Ave., #1675, Minneapolis, Minnesota, 55402.

## FACTUAL ALLEGATIONS

**THE CONSUMER DEBT**

5.      In or around 2010 or 2011, it is alleged that Plaintiff incurred a debt to Sprint Corporation stemming from an unpaid invoice for personal cellular telephone and data services (hereinafter the "Sprint" debt).

6.      Sometime prior to February 2017, the Sprint debt was sent, transferred, and/or assigned to Defendant for the purposes of collection.

7.      The Sprint debt is a "debt" as that term is defined by 15 U.S.C. § 1692a(5) because it arose from Plaintiff's transactions that were incurred for personal, family or household purposes.

8.      Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3) and/or a person affected by a violation of the FDCPA with standing to bring this claim under 15 U.S.C. § 1692k(a) because she is allegedly obligated to pay the Sprint debt.

**DEFENDANT DEBT COLLECTOR**

9.      Defendant is engaged in a business, the principal purpose of which is the collection of any obligations (and/or alleged obligations) of consumers to pay money arising out of transactions that are primarily for personal, family, or household purposes.

10. The "obligations and/or alleged of obligations" that Defendant attempts to collect are "debts" under 15 U.S.C. § 1692a(5).

11. According to Defendant's website, Defendant regularly collects or attempts to collect debts owed or due another (or asserted to be owed or due another).

12. Specifically, Defendant's website states the following:

   a. "Diversified Consultants, Inc. is a business specializing in accounts receivable management functions primarily for telecom and cable providers and their affiliated billing and business partners located throughout the United States. Our service offerings include both first and third party collections.";

   b. "Diversified Consultants, Inc. is one of the nation's leading Telecom-specific collection agency [sic] specializing in the recovery of Wireless, Landline, Cable, Satellite and Security debts.";

   c. "We specialize in the recovery of telecom bad debt at any level of delinquency."; and

   d. "This is an attempt to collect a debt. Any information obtained will be used for that purpose. This communication is from a debt collector."

13. Defendant regularly uses the mail and telephone to collect debts directly by: sending debt collection letters to consumers; making debt collection phone calls to consumers; and by reporting debts to credit reporting agencies, which includes sending written correspondence and making telephone calls.

14. Federal court records indicate that Defendant has repeatedly been sued under the FDCPA as a debt collector in United States District Courts across the country.

15. Upon information and belief, Defendant has repeatedly been held liable as a debt collector under the FDCPA in previous lawsuits.

16. Defendant holds an active "Collection Agency" license with the Minnesota Department of Commerce, license number 20314465.

17. Defendant is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

18. Defendant was acting as debt collector with respect to the collection of the Sprint debt from Plaintiff as described above in paragraphs 5-8.

**DEFENDANT'S ILLEGAL DEBT COLLECTION EFFORTS**

19. In or around late 2016 through early 2017, Plaintiff began the process of researching options for financing a home, obtaining additional consumer credit, and potentially joining the United States Air Force.

20. As part of that process, Plaintiff began monitoring her credit reports.

21. In or around February 2017, Plaintiff learned that Defendant was reporting the Sprint debt to TransUnion, LLC (hereinafter "TransUnion") and Equifax Inc. (hereinafter "Equifax").

22. TransUnion and Equifax are consumer reporting agencies – also known as a "credit bureau" (collectively "Credit Bureaus").

23. Defendant was reporting the Sprint debt as an adverse account in collections on Plaintiff's credit report.

24. Prior to February 2017, Defendant did not send any written notice to Plaintiff informing Plaintiff of her validation and/or verification rights under 15 U.S.C. § 1692g(a).

25. Prior to April 2017, Plaintiff had yet to receive any written correspondence from Defendant.

26. In or around February 2017, Plaintiff contacted Defendant to obtain account information because she had not received any written correspondence from Defendant.

27. Although Plaintiff disputed the validity of the Sprint debt, Plaintiff also wanted to pursue settlement options because her primary concern at the time was cleaning up her credit report.

28. During the February 2017 telephone call:

   a. Plaintiff sought information regarding the Sprint debt;

   b. Defendant informed Plaintiff that it was a debt collector and that it was attempting to collect a debt;

   c. Upon information and belief, Plaintiff provided her current address to Defendant;

   d. Defendant informed Plaintiff that she owed approximately $2,450;

   e. Plaintiff inquired as to why the amount of the Sprint debt was so high and whether Defendant was able to offer any settlement options; and

   f. Defendant provided Plaintiff with a settlement option.

29. Defendant's conversation with Plaintiff on February 2017 was a "communication" as defined by 15 U.S.C. § 1692a(2).

30. The February 2017 telephone call was Defendant's initial communication with Plaintiff.

31. After the February 2017 telephone call, Plaintiff could not determine why the amount of the Sprint debt was so high or whether the Sprint debt was even a valid debt.

32. On March 6, 2017, Plaintiff sent written correspondence to Defendant explicitly disputing the validity of the Sprint debt (hereinafter "Dispute Letter").

33. At the top of the Dispute Letter, Plaintiff conspicuously included the date, her first and last name, her account number with Defendant, and her **current mailing address**.

34. Plaintiff's written Dispute Letter, amongst other things requested:

   a. Proof that she was the correct person who allegedly owed the Sprint debt;

   b. Evidence that she had any legal obligation to pay Defendant;

   c. Validation and/or verification of the Sprint debt pursuant to 15 U.S.C. § 1692g; and

   d. That Defendant cease all collection activity while the alleged Sprint debt was being investigated, including the placement of adverse account information on her credit report.

35. Plaintiff sent the Dispute Letter to Defendant via Certified Mail® through the United States Postal Service.

36. Defendant received the Dispute Letter on March 9, 2017.

37. After receiving no response from Defendant, Plaintiff contacted Defendant on or around April 19, 2017.

38. On or around April 19, 2017, Plaintiff spoke to two of Defendant's representatives.

39. When Plaintiff spoke to the first representative, Plaintiff inquired as to why Defendant has not responded to her Dispute Letter and why Defendant was continuing to report the Sprint debt on her credit report.

6

40. The first representative informed Plaintiff that the amount owed on the Sprint debt was $2,450 and asked how Plaintiff could pay the Sprint debt.

41. After some confusion and dispute, the first representative transferred Plaintiff to a second representative, an alleged supervisor for Defendant.

42. When Plaintiff spoke to the second representative, Plaintiff inquired as to why Defendant has not responded to her Dispute Letter and why Defendant was continuing to report the Sprint debt on her credit report.

43. Plaintiff requested that Defendant remove the Sprint debt from her credit report and that Defendant send validation or verification of the Sprint debt.

44. The second representative began to argue with Plaintiff in an aggressive, harassing, and abusive tone.

45. The second representative told Plaintiff that Defendant did not need to send Plaintiff validation or verification of the Sprint debt.

46. The second representative told Plaintiff that the Sprint debt cannot be disputed because Plaintiff had already made payments on the account.

47. Upon information and belief, the second representative used profane language when speaking with Plaintiff.

48. Plaintiff has never made any payments on the Sprint debt. As such, Plaintiff informed Defendant that she had never made any payments towards the Sprint debt.

49. Eventually, Plaintiff terminated the phone conversation with Defendant and immediately began to look for an attorney as a result of Defendant's abusive, harassing, and misleading debt collection efforts.

50. Defendant's tone, harassment, and aggression made Plaintiff very anxious, nervous, scared, humiliated, embarrassed, angry and annoyed.

51. During the April 19, 2017 telephone conversation between both representatives, Defendant informed Plaintiff that:

   a. Defendant was a debt collector and that it was attempting to collect a debt;

   b. Defendant had received Plaintiff's written dispute;

   c. Defendant had sent out validation information to Plaintiff on or around April 4, 2017;

   d. The validation information was sent to Plaintiff's old address in New Brighton, Minnesota;

   e. The validation information was returned to Defendant as undeliverable; and

   f. That Defendant did not have Plaintiff's current address.

52. Additionally, during the April 19, 2017 phone call, Defendant demanded payment of the Sprint debt in the amount of $2,450.

53. Defendant's conversation with Plaintiff on April 19, 2017 was a "communication" as defined by 15 U.S.C. § 1692a(2).

54. Plaintiff was confused, anxious, and angry because Defendant had not provided her with validation or verification of the Sprint debt and was continuing to collect the Sprint debt through credit reporting and demands for payment.

8

55. As of March 9, 2017, Defendant was fully-aware that Plaintiff did not live at the New Brighton address because her current address was listed at the very top of the Dispute Letter, which Defendant received.

56. Defendant's representations regarding Plaintiff's address, validation, and payments were objectively false, deceptive, and misleading.

57. On or around April 26, 2017, Plaintiff finally received a letter from Defendant which purportedly validated and/or verified the Sprint debt (hereinafter "Validation Letter").

58. The Validation Letter was dated **April 21, 2017**, which was after multiple demands for payment and reports to the Credit Bureau.

59. Under 15 U.S.C. § 1692g, upon receipt of Plaintiff's written Dispute Letter, Defendant was required to cease all further debt collection activity prior to obtaining validation of the Sprint debt and subsequently sending validation of the Sprint debt to Plaintiff.

60. Debt collectors are required to send notice to a "*valid and proper address where the consumer may actually receive it.*" See *Duranseau v. Portfolio Recovery Associates, LLC*, No. 0:13-cv-00955 (PJS/LIB), 2015 WL 632144 (D. Minn. Feb. 13, 2015) (referring to notice under § 1692g(a)) (citations omitted and emphasis added); *see also Johnson v. CFS II, Inc.*, No. 5:12-cv-01091, 2013 WL 1809081, at *13 (N.D. Cal. Apr. 28, 2013).

61. "If the debt collector knows the validation notice was sent to the wrong address, the debt collector has not complied with the plain language of the statute." *Duranseau*, 2015 WL 632144, at *n. 2 (quoting *Johnson v. Midland Credit Management, Inc.*, No. 1:05-cv-1094, 2006 WL 2473004, at *12 (N.D. Ohio Aug. 24, 2006)). *See also Schroeder v. Meyer*, 4:15-cv-00040 [ECF No. 27] (N.D. Ind. Mar. 31, 2017) (same).

62. Prior to sending validation and/or verification to Plaintiff, Defendant attempted to collect the Sprint debt on several occasions in violation of 15 U.S.C. § 1692g.

63. Despite receiving Plaintiff's Dispute Letter on March 9, 2017:

   a. Defendant continued to report the Sprint debt to the Credit Bureaus on March 13, 2017 and April 3, 2017, and April 20, 2017; and

   b. Defendant continued to engage in collection activity, including demanding payment from Plaintiff on multiple occasions.

64. Defendant's collection efforts overshadowed and were inconsistent with Plaintiff's rights under 15 U.S.C. § 1692g.

65. Reporting debts to the Credit Bureaus constitutes debt collection activity under 1692g(b). *See Edeh v. Midland Credit Management, Inc.*, 748 F. Supp. 2d 1030, 1034-36 (D. Minn. 2010).

66. Defendant's report to the Credit Bureaus was a "communication" as defined by 15 U.S.C. § 1692a(2).

67. By wrongfully reporting the Sprint debt to the Credit Bureaus:

   a. Defendant was attempting to induce and/or persuade Plaintiff to pay the Sprint debt, where Plaintiff would otherwise not do so. *See McIvor v. Credit Control Servs., Inc.*, 773 F.3d 909, 914 (8th Cir. 2014) (citations omitted);

b. Defendant was attempting to induce and/or persuade Plaintiff to communicate with Defendant, where Plaintiff would otherwise not do so.

c. Plaintiff's credit score, FICO score and/or credit rating were all lowered;

d. Plaintiff suffered actual injury, harm and monetary damages; and

e. Plaintiff lost financing opportunities for housing and other consumer credit, including but not limited to financing for Neighborhood Assistance Corporation of America ("NACA") and financing for a vehicle.

68. Credit reporting collection accounts negatively impacts the way Credit Bureaus calculate Plaintiff's credit scores.

69. According to TransUnion's website, payment history makes up 40% of a consumer's credit score, while the amount owed to lenders represents 20% of the consumer's credit score. *See What is a Credit Score?* (Aug. 18, 2017, 6:17 p.m.), https://www.transunion.com/credit-score.

70. According to Equifax's website, payment history makes up 35% of a consumer's credit score, while the amount owed to lenders represents 30% of the consumer's credit score. *See How is my credit score calculated?* (Aug. 18, 2017, 6:12 p.m.), https://help.equifax.com/app/answers/detail/a_id/138/~/information-factored-in-score; *see also* What's in my FICO Scores (Aug. 18, 2017, 6:19 p.m.), http://www.myfico.com/credit-education/whats-in-your-credit-score/. (same).

71. Plaintiff spent a significant amount of time analyzing and reviewing her credit report, financial accounts, and credit score through internet research, consumer credit monitoring websites, and with through her attorneys.

72. The confusion and uncertainty surrounding Plaintiff's credit's report, credit rating, credit score and financial security made Plaintiff very anxious, nervous, scared, humiliated, embarrassed, angry and annoyed.

73. Based on the aforementioned facts, Defendant intentionally deceived Plaintiff, intentionally misled Plaintiff, made material misrepresentations to Plaintiff concerning the Sprint debt, and used unfair and unconscionable means to collect or attempt to collect the Sprint debt.

74. Based on the aforementioned facts, Defendant intentionally harassed and abused Plaintiff.

75. Plaintiff has suffered actual damages, tangible injuries, and intangible injuries as a result of Defendant's unlawful and wrongful collection efforts.

76. Plaintiff has suffered harm because:

   a. Plaintiff has suffered monetary damages, emotional distress, stress, aggravation, anger, anxiety, nuisance, humiliation, inconvenience, embarrassment and annoyance;

   b. Defendant violated Plaintiff's rights not be a target of unlawful, wrongful, harassing, and misleading debt collection activity;

   c. Defendant overshadowed and created uncertainty in Plaintiff's rights to validation and/or verification of the Sprint debt;

   d. Defendant created the real risk of Plaintiff paying more than what Defendant was legally entitled to collect and/or paying Defendant when no payment obligation existed;

   e. Plaintiff had to waste time by engaging in needless investigation into her credit history and the Sprint debt, multiple phone calls and correspondence with Defendant, communications with Credit Bureaus, obtaining consumer

    credit report services, and communications, review and analysis with her attorneys;

  f. Plaintiff has incurred costs and expenses consulting with her attorneys as a result of Defendant's unlawful and wrongful collection efforts;

  g. Defendant negatively affected Plaintiff's credit score, which impeded or is likely to impede Plaintiff's ability for lower-cost credit, to find a job, or find housing; and

  h. Defendant created confusion as to Plaintiff's financial security and caused emotional stress, anger, anxiety, and aggravation regarding her financial security.

77. All of Plaintiff's above-referenced injuries – both tangible and intangible – are actual, concrete injuries that are widely recognized by the United States Supreme Court, United States Court of Appeals for the Eighth Circuit and the United States District Court for the District of Minnesota.

### COUNT I
### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### HARASSMENT OR ABUSE

78. Plaintiff restates and re-alleges the preceding allegations of this Complaint.

79. In connection with the collection of the alleged debt, Defendant engaged in conduct the natural consequence of which was to harass, oppress, or abuse Plaintiff by: (a) arguing with Plaintiff in an aggressive, abusive, and harassing tone; and (2) by using profane language when speaking with Plaintiff.

80. Defendant's conduct violated 15 U.S.C. §§ 1692d and 1692d(2).

81. As a result of Defendant's violations of the FDCPA, Plaintiff is entitled to actual damages under 15 U.S.C. § 1692k(a)(1), statutory damages of up to $1,000.00 under

15 U.S.C. § 1692k(a)(2), and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

## COUNT II
## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## FALSE OR MISLEADING REPRESENTATIONS

82. Plaintiff restates and re-alleges the preceding paragraphs of this Complaint.

83. Defendant used false, deceptive and/or misleading means in connection with the collection of the alleged debt by:

   a. Deceptive, false, and misleading representations to Plaintiff that compensation may be lawfully received by collecting the Sprint debt before sending Plaintiff validation;

   b. Threatening to take legal action that cannot legally be taken or that Defendant did not intend to take;

   c. Deceptive, false, and misleading representations to Plaintiff that Defendant had sent validation to Plaintiff;

   d. Deceptive, false, and misleading representations to Plaintiff that Plaintiff had made payments on the Sprint debt and could not dispute the debt;

   e. Deceptive, false, and misleading representations to Plaintiff that Defendant did not know Plaintiff's address and/or did not have Plaintiff's address;

   f. Deceptive, false, and misleading representations to Plaintiff that Defendant could collect the Sprint debt and continue to report the Sprint debt on Plaintiff's credit report prior to validating the account;

   g. Wrongfully and deceptively attempting to induce Plaintiff to pay the Sprint debt, where Plaintiff would otherwise not do so; and

   h. Wrongfully and deceptively attempting to induce Plaintiff to communicate with Defendant, where Plaintiff would otherwise not do so.

84. Defendant's conduct violated 15 U.S.C. §§ 1692e, 1692e(2)(b), 1692e(5), and 1692e(10).

85. As a result of Defendant's violations of the FDCPA, Plaintiff is entitled to actual damages under 15 U.S.C. § 1692k(a)(1), statutory damages of up to $1,000.00 under 15 U.S.C. § 1692k(a)(2), and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

**COUNT III**
**VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**
**UNFAIR AND UNCONSIONABLE MEANS**

86. Plaintiff restates and re-alleges the preceding paragraphs of this Complaint.

87. Defendant used unfair or unconscionable means to collect or attempt to collect the alleged debt by:

   a. Creating uncertainty as to Plaintiff's rights to dispute the Sprint debt and/or verify the Sprint debt;

   b. Arguing with Plaintiff in an aggressive, abusive, and harassing tone in order to get Plaintiff to pay the Sprint debt;

   c. Arguing with Plaintiff's ability to dispute the Sprint debt by making false allegations of payment;

   d. Continuing to collect the Sprint debt after Plaintiff's written dispute was received but without providing Plaintiff with validation or verification;

   e. Attempting to induce Plaintiff to pay the Sprint debt, where Plaintiff would otherwise not do so;

   f. Attempting to induce Plaintiff to communicate with Defendant, where Plaintiff would otherwise not do so; and

   g. Failing and/or refusing to honor Plaintiff's dispute.

88. Defendant's conduct violated 15 U.S.C. § 1692f.

89. As a result of Defendant's violations of the FDCPA, Plaintiff is entitled to actual damages under 15 U.S.C. § 1692k(a)(1), statutory damages of up to $1,000.00 under 15 U.S.C. § 1692k(a)(2), and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

## COUNT IV
## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## VALIDATION OF DEBT

90. Plaintiff restates and re-alleges the preceding paragraphs of this Complaint.

91. Within five days after Defendant's initial communication with Plaintiff, Defendant failed to send Plaintiff a written notice containing: (a) the amount of the debt; (b) the name of the original creditor; (c) disclosure of Plaintiff's rights to dispute the validity of the Sprint debt within 30 days; (d) disclosure of Plaintiff's rights to seek verification of the Sprint debt within 30 days; and (e) disclosure of Defendant's obligations upon receipt of a request for validation and/or verification.

92. Defendant's collection activities overshadowed and were inconsistent with Plaintiff's right to dispute the debt and/or to seek validation of the debt.

93. Prior to sending validation and/or verification to Plaintiff, Defendant attempted to collect the Sprint debt on several occasions in violation of 15 U.S.C. § 1692g.

94. Despite receiving Plaintiff's Dispute Letter on March 9, 2017, Defendant continued to report the Sprint debt to TransUnion and Equifax on March 13, 2017 and April 3, 2017, and April 20, 2017.

95. Despite receiving Plaintiff's Dispute Letter on March 9, 2017, Defendant continued to engage in collection activity, including demanding payment from Plaintiff on multiple occasions.

96. Defendant's conduct violated 15 U.S.C. §§ 1692g(a) and 1692g(b).

97. As a result of Defendant's violations of the FDCPA, Plaintiff is entitled to actual damages under 15 U.S.C. § 1692k(a)(1), statutory damages of up to $1,000.00 under 15 U.S.C. § 1692k(a)(2), and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

## **JURY DEMAND**

98. Plaintiff demands trial by jury.

**WHEREFORE**, Plaintiff Alda Reed demands a trial by jury and prays for judgment against Defendant Diversified Consultants, Inc. as follows:

1. Awarding judgment against Defendant in an amount to be determined at trial;

2. Awarding Plaintiff actual damages, statutory damages, and reasonable attorneys' fees and costs pursuant to 15 U.S.C. §§ 1692k(a)(1) - (3) against Defendant;

3. Awarding Plaintiff any costs, litigation expenses, disbursements, and allowable attorneys' fees; and

4. Awarding Plaintiff such other and further relief as the Court deems proper, just and equitable.

**TARSHISH CODY, PLC**

Dated: August 21, 2017    By:   s/ Adam R. Strauss
Adam R. Strauss (#0390942)
ars@attorneysinmn.com
Scott M. Cody (#0392137)
scody@attorneysinmn.com
6337 Penn Avenue South
Minneapolis, Minnesota 55423
Telephone: (952) 361-5556
Facsimile: (952) 361-5559
**ATTORNEYS FOR PLAINTIFF**

## VERIFICATION OF COMPLAINT AND CERTIFICATION

Pursuant to 28 U.S.C. § 1746, Plaintiff Alda Reed verifies, certifies, and declares under penalty of perjury, as follows:

1. I am a Plaintiff in this civil proceeding.
2. I have read the above-entitled civil Amended Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3. I believe that this civil Amended Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this civil Amended Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Amended Complaint.
5. I have filed this civil Amended Complaint in good faith and solely for the purposes set forth in it.
6. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

**EXECUTED ON** ___08___ ___21___, ___2017___
                                  Month        Day        Year

*/s/ Alda Reed*
**Alda Reed**